# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| BO DEPENA and NATALIE | * | |
| DEPENA, legal representatives | * | No. 13-675V |
| of a minor child, RHONE DEPENA, | * | Special Master Christian J. Moran |
| | * | |
| Petitioners, | * | |
| | * | Filed: March 30, 2017 |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' fees and costs on interim |
| AND HUMAN SERVICES, | * | basis, expert's reasonable hourly |
| | * | rate, expert's reasonable number of |
| Respondent. | * | hours |

* * * * * * * * * * * * * * * * * * * * * *

Michael A. Baseluos, Baseluos Law Firm, San Antonio, TX, for Petitioners;
Heather L. Pearlman, United States Dep't of Justice, Washington, DC, for
Respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

On September 12, 2013, Bo and Natalie DePena filed a petition for
compensation on behalf of their son, Rhone, alleging that he developed pneumonia
as a result of the administration of measles-mumps-rubella vaccine on September
15, 2010.  The DePenas seek compensation pursuant to the National Childhood
Vaccine Injury Act, 42 U.S.C. §§ 300aa–10 through 34 (2012).  The case remains
pending as they have filed a motion for review.  For the reasons set forth below,

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and
Promotion of Electronic Government Services), requires that the Court post this decision on its
website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing
redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).
Any redactions ordered by the special master will appear in the document posted on the website.

**petitioners are entitled to an interim award of attorneys' fees and costs in the amount of $148,586.81**.

## Procedural History

Represented by Michael Baseluos, the DePenas filed their petition on September 12, 2013, with gathering and filing of medical records completed about two months thereafter. The Secretary reviewed the record and indicated that some medical records remained outstanding. Resp't's Status Rep. filed Dec. 12, 2013. The DePenas investigated the availability of the records requested by the Secretary for several months. On May 28, 2014, the Secretary filed her report pursuant to Vaccine Rule 4. The Secretary asserted that the DePenas failed to establish that the MMR vaccine caused a vaccine-related injury and that the DePenas failed to satisfy their burden under any of the Althen prongs. Ultimately, the Secretary recommended that compensation be denied. Resp't's Rep., filed May 28, 2014, at 10-11.

During the ensuing status conference, the DePenas stated that they would retain an expert to opine on the case. Order, issued June 12, 2014. The process of locating an expert and obtaining a report took some time, with the first expert report of Boris Lokshin, a pediatric pulmonologist, being filed on February 28, 2015. Exhibit 21. The DePenas subsequently filed five additional expert reports from Dr. Lokshin. Exhibits 22, 23, 25, 30, and 31. The Secretary filed three expert reports from Neil Romberg, a pediatric immunologist. Exhibits A, P, FF.

A hearing was scheduled for February 11, 2016, in San Antonio, Texas. The parties submitted pre-hearing briefs. During the hearing, Dr. Lokshin testified but did not complete his testimony. Dr. Romberg also testified, providing a response to a portion of Dr. Lokshin's testimony. The hearing was then suspended to be resumed at a later date.

Following the first session of the hearing, the DePenas filed several additional articles from Dr. Lokshin as well as a demonstrative exhibit created during the hearing. With this record, another hearing was held, via videoconference, on April 12, 2016. During the second hearing, both Dr. Lokshin and Dr. Romberg completed their oral testimony.

On May 16, 2016, the DePenas filed their first motion for attorneys' fees and costs on an interim basis. The Secretary filed a response. While not stating any specific objections, she made observations. The Secretary noted that the total

amount requested was $176,078.72, which included $77,981.00 in attorneys' fees and costs (apart from the costs associated with Dr. Lokshin), $8,268.31 in costs supposedly incurred personally by the petitioners, and $87,950.00 for expert fees. The Secretary proposed that a reasonable award would fall between $80,000.00 and $100,000.00, suggesting that the undersigned "exercise his discretion" in determining a reasonable award of attorneys' fees and costs within the range she provided. Resp't's Resp., filed June 2, 2016, at 4.

On September 8, 2016, the DePenas filed their second motion for attorneys' fees and costs, providing a more detailed application that accounted for briefs filed after the hearing. The total requested amount is $194,402.41. The individual components are:

| Attorneys' Fees | $76,308.10 |
|---|---|
| Costs: | |
|     Personally Incurred: | $2,150.00 |
|     Attorneys' Costs (exclusive of Dr. Lokshin) | $4,240.62 |
|     Dr. Lokshin's Fees | $109,825.00 |
|     Dr. Lokshin's Expenses | $1,878.69 |

The Secretary responded, incorporating her previous response and recommending that the undersigned award fees and costs within the range provided. Resp't's Resp., filed Sept. 19, 2016, at 1.

During a status conference held on November 15, 2016, the undersigned discussed the fee application with the parties. With respect to the attorneys' fees, the undersigned stated that a preliminary review suggested that a handful of attorney tasks appeared to take an excessive amount of time. After a discussion, Mr. Baseluos volunteered that a small reduction might be acceptable.

With respect to the costs associated with Dr. Lokshin, the undersigned expressed some concern regarding Dr. Lokshin's proposed hourly rate and number of hours billed. Dr. Lokshin billed $500 per hour for a total of 221.70 hours. Mr. Baseluos defended the amount requested as well-founded due to the number of reports filed, the number of articles filed, and the complexity of the case. Mr. Baseluos's defense of Dr. Lokshin's invoice did not prevent him from indicating a willingness to discuss Dr. Lokshin's fees to reach a compromise. However, the Secretary maintained her position of not negotiating attorneys' fees and costs. See Dorego v. Sec'y of Health & Human Servs., No. 14-337V, 2016 WL 1635826 (Fed. Cl. Spec. Mstr. May 16, 2016).

Another status conference to discuss Dr. Lokshin's invoice was held on February 17, 2017.  There, the undersigned suggested that the Secretary present invoices that Dr. Romberg created.  However, the Secretary resisted this suggestion, arguing that Dr. Romberg's invoice would not provide information that would help the undersigned evaluate the reasonableness of Dr. Lokshin's request.  The DePenas for their part were ambivalent.  In their view, the information already presented was sufficient to establish the reasonableness of Dr. Lokshin's work, but, if the special master wanted Dr. Romberg's invoices, then the DePenas were not opposed to the Secretary producing them.

The DePenas more formally presented their views in an amended motion for an award of attorneys' fees and costs, filed on February 20, 2017.  "Counsel for petitioner has indicated that if the [special master] is contemplating a significant reduction in Dr. Lokshin's fees (the definition of 'significant' being more than 20%), then petitioner asks the [special master] to demand respondent produce Dr. Romberg's invoices."  Pet'rs' Updated App'n, filed Feb. 20, 2017, at 5.  With this brief, the DePenas also took the opportunity to submit a request for additional compensation for Mr. Baseluos to reflect his efforts regarding attorneys' fees and costs.

In addition to the motions for an award of attorneys' fees and costs on an interim basis, the DePenas claim for compensation for Rhone's pneumonia remained pending.  On February 22, 2017, a decision found that the DePenas failed to meet their burden of proof.  2017 WL 1075101.  This decision did not end the case as the DePenas, on March 21, 2017, filed a motion for review.

The motion for review of the entitlement decision does not affect the outcome of the pending motions for an award of attorneys' fees and costs on an interim basis.  The September 8, 2016 motion for attorneys' fees and costs is ready for adjudication and is resolved in this decision.[2]

---

[2] To be clear, this decision adjudicates the September 8, 2016 motion for attorneys' fees and costs only.  The undersigned is aware that the DePenas have recently updated their request.  However, the September 8, 2016 motion is a more expeditious vehicle for providing an award to the DePenas.  The DePenas may request compensation for the work Mr. Baseluos performed that was not included in their September 8, 2016 motion in a separate motion for attorneys' fees and costs.

## Analysis

Broadly speaking, resolving a motion for an award of attorneys' fees and costs on an interim basis requires consideration of three issues.  The first is whether the petitioner is eligible for attorneys' fees and costs.  If the petitioner is eligible, then the second issue is whether the petitioner should receive any attorneys' fees and costs at this time.  The third question is, assuming that some award is appropriate, what constitutes a reasonable amount in this case.  See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 91 (2016).

**1.  Have Petitioners Satisfied the Requirements for an Award of Attorneys' Fees and Costs?**

To be eligible for any award of attorneys' fees and costs, petitioners must satisfy the standards of good faith and reasonable basis.  See 42 U.S.C. § 300aa— 15(e) (2012).  Dr. Lokshin's reports fulfill the reasonable basis standard in this case.  Moreover, the Secretary does not contend the DePenas brought the claim without a reasonable basis or in bad faith.

**2.  Should an Award of Attorneys' Fees and Costs Be Awarded on an Interim Basis?**

The next question is whether an award of attorneys' fees and costs should be made now, that is, on an interim basis.  This issue involves consideration of various factors, including protracted proceedings, costly experts, and undue hardship.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1351-52; McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 300-01 (2011) (discussing Avera factors).

The DePenas satisfy these factors.  Their attorney, Mr. Baseluos, gathered and filed medical records, obtained expert reports, attended two hearings, and the case has been pending for over three years without any previous award of interim fees and costs.  Additionally, the DePenas have personally incurred costs, and there seems to be little reason to force petitioners to wait for reimbursement of these costs.  Moreover, the Secretary did not raise any objection to an interim award during the November 15, 2016 status conference.

### 3.  What Is A Reasonable Amount of Attorneys' Fees and Costs?

The last issue is determining a reasonable amount for attorneys' fees and costs.  In the September 8, 2016 motion, the DePenas seek an award of $194,402.41 in attorneys' fees and costs.  The Secretary maintained that the reasonable amount would not exceed $100,000.00.

### A.  Attorneys' Fees

The process of determining a reasonable amount of attorneys' fees involves the lodestar value.  Avera, 515 F.3d at 1347-48.

Here, the DePenas request $76,308.10 in attorneys' fees.  Mr. Baseluos has billed $251 per hour in 2013, $255 per hour in 2014, $257 per hour in 2015, and $265 per hour in 2016.  When Mr. Baseluos performed tasks that a paralegal could perform, he billed $90 per hour.

The DePenas have not stated that they are requesting that Mr. Baseluos be compensated at rates prevailing in the forum.  See McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (setting forum rates), reconsideration denied, No. 09-293V, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  Regardless, the proposed rates are accepted as reasonable as appropriate for attorney in San Antonio, Texas with an amount of experience similar to Mr. Baseluous.  See 2015 Hourly Fact Sheet, State of Texas Bar (Mar. 24, 2017), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends.

For the number of hours, although not required, the undersigned has conducted a line-by-line review of the application for reasonableness.  See Shea v. Sec'y of Health & Human Servs., No. 13-737V, 2015 WL 9594109, at *2 (Fed. Cl. Spec. Mstr. Dec. 10, 2015) ("special masters are not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination . . . and certainly need not do so when Respondent has not attempted to highlight any specific alleged inefficiencies").  The undersigned was impressed with Mr. Baseluos's billing judgment and the thoroughness of his time entries.  Nevertheless, in the undersigned's experience (see Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993)), the charge associated with a small number of tasks was excessive.  See, e.g., entry for March 5, 2014:

"Draft/revise status report and enlargement of time.  0.40 hours."  Consequently, the attorneys' fees are reduced to $73,000.00.

## B. Attorneys' Costs

Attorneys' costs are those incurred in pursuit of the litigation.  In this case, there are three categories of costs, those related to Mr. Baseluos, the DePenas, and the expert, Dr. Lokshin.

### (1) *Mr. Baseluos's Costs*

Mr. Baseluos is awarded $4,240.62 for incurred costs such as the transcript, videoconference room, etc.  These are reasonable and well-documented, and, therefore, awarded in full.

### (2) *The DePenas' Costs*

The DePenas are awarded $2,150.00 for costs personally incurred in pursuit of this litigation.  These costs are reasonable and adequately documented.

### (3) *Costs Related to Dr. Lokshin's Fee*

The remainder of costs concerns amounts billed by Dr. Lokshin.  Like attorneys' fees, reasonable expert fees are determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours.  The DePenas request an award for Dr. Lokshin in the amount of $110,850.00 .  This amount represents 221.70 hours at a rate of $500 per hour.  See Pet'rs' Fee Mot., filed May 16, 2016, exhibit D at 8; Pet'rs' Second Fee Mot., filed Sept. 8, 2016, exhibit G at 1.[3]

A reasonable hourly rate for an expert takes into account multiple factors.  For example, experts who are experienced in the Vaccine Program work relatively quickly, and this efficiency translates to a relatively high hourly rate.  Qualifications like board certification in a relevant discipline also support a relatively high hourly rate.  A doctor's expertise can also be demonstrated by teaching medical school students as a professor of medicine and writing articles

---

[3] The petitioners' September 8, 2016 updated motion for attorneys' fees and costs appears to contain an error in calculating the amount Dr. Lokshin has requested.

published in peer-reviewed journals.  See Simon v. Sec'y of Health & Human
Servs., No. 05–941V, 2008 WL 623833, at *3 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

In this case, petitioners have not established that Dr. Lokshin is entitled to
$500 per hour.  Preliminarily, this case was Dr. Lokshin's first time as an expert in
the Vaccine Program.  His newness to the Vaccine Program means that Dr.
Lokshin must learn about the procedures in the Vaccine Program and this learning
brings a certain inefficiency that does not affect the work of more experienced
experts, who have been awarded $500 per hour.

Additionally, Dr. Lokshin's expertise does not match the relevant subject
matter.  As explained in the entitlement decision, Dr. Lokshin's theory was based
on how the immune system (particularly B cells and T cells) responds to a
pneumococcus infection.  Thus, the relevant discipline was immunology.
Decision, 2017 WL 1075101.  However, Dr. Lokshin's background and experience
focus on allergy, asthma, and pulmonology.  Exhibit 19 (curriculum vitae); Tr. 62.[4]
His board certification in pediatric pulmonology similarly speaks to Dr. Lokshin's
expertise in that field, not immunology.

Finally, even in pulmonology, Dr. Lokshin seems not to occupy a position
that suggests that he is leading doctor, who would merit the highest hourly rate.
He does not teach large classes of medical students.  He is not conducting any
research.  He has not written any articles published in peer-reviewed journals since
1993.  He does not serve as an editor on any medical journals.  Exhibit 19; Tr. 75-
80.  The experts in the Vaccine Program who are compensated at a rate of $500 per
hour typically, such as Dr. Steinman, have all these qualifications.

For these reasons, the petitioners have not established the reasonableness of
compensating Dr. Lokshin at $500 per hour.  Based on the undersigned's
experience, a rate of $325 per hour is more commensurate with Dr. Lokshin's
experience.  See Barclay v. Sec'y Health & Human Servs., No. 07-605V, 2014 WL
2925245 (Fed. Cl. Spec. Mstr. Feb. 7, 2014) (reducing number of hours for an
attorney who charged a relatively high hourly rate).

---

[4] Dr. Lokshin's most relevant experience was completing a joint fellowship in
immunology / allergy and pediatric pulmonology.  But, this fellowship ended in 1990, and after
that Dr. Lokshin appears not to have practiced immunology.

After a determination about a reasonable hourly rate, the next factor to consider is a reasonable number of hours. Here, Dr. Lokshin seeks compensation for 221.70 hours.[5] At first glance, this amount of time shockingly exceeds the amount of time that experts usually spend on a case that included two days of hearing. Even in the absence of a specific objection from the Secretary, the undersigned could not endorse an expert's spending more than 200 hours without some review of the supporting materials.

Dr. Lokshin, like Mr. Baseluos, submitted timesheets with thorough entries. Each entry contains a detailed description of the activity for which Dr. Lokshin has charged time. Dr. Lokshin summarized the medical records, wrote six reports, reviewed more than 70 articles, assessed the Secretary's expert reports, prepared for two days of hearing, and attended the two hearings. Pet'rs' Fee Mot., exhibit D. With one exception, the details in the invoices persuasively establish the reasonableness of Dr. Lokshin's efforts.

The finding that Dr. Lokshin spent a reasonable amount of time is premised upon the previous finding that reduced Dr. Lokshin's proposed hourly rate. Dr. Lokshin's proposed hourly rate was reduced because, in part, he did not have the requisite experience in immunology to work efficiently. Once Dr. Lokshin's hourly rate is modified to account for the time required to get up to speed on immunology, an additional reduction in the time spent on the case is not required. Simon, 2008 WL 623883, at *5; Kuperus v. Sec'y of Health & Human Servs., No. 01–60V, 2006 WL 3499516, at *3 (Fed. Cl. Spec. Mstr. Nov. 17, 2006) (stating "While it is reasonable to award higher hourly rates to well-qualified experts, that is, in part, with the understanding that such expert will expend fewer hours on the case"). In other words, Dr. Lokshin is not being penalized twice for his relative lack of experience.[6] For the time that Dr. Lokshin spent through the completion of the hearing (175.9 hours), the petitioners are awarded $57,167.50 (175.9 hours times $325.00 per hour).[7]

---

[5] Through completion of the second day of hearing, Dr. Lokshin spent 175.9 hours. Pet'rs' Mot., exhibit D. As explained below, after the hearing ended, Dr. Lokshin spent an additional 45.8 hours.

[6] In a future case, if Dr. Lokshin were to demonstrate increased efficiency by spending fewer hours, his hourly rate might rise.

[7] Because the undersigned is finding that all the time Dr. Lokshin spent through the end of the hearing was reasonable, obtaining invoices from Dr. Romberg is not necessary.

The only task that was not reasonable for Dr. Lokshin to perform was submitting additional reports after the hearing concluded.  At the end of the hearing, the parties expressed an interest in filing "briefs."  See order, issued Apr. 15, 2016.  Ordinarily, an attorney (here, Mr. Baseluos) would draft a brief. Unexpectedly, Mr. Baseluos directed Dr. Lokshin to prepare another report. Exhibit 30.  Then, after the Secretary had commented that the special master ordered briefs not expert reports (Resp't's Br., filed July 27, 2016, at 1 n.1), Mr. Baseluos again instructed Dr. Lokshin to prepare another report.  Exhibit 31.  For his work in preparing these two reports, Dr. Lokshin has requested compensation for 45.8 hours.  Pet'rs' Second Fee Mot., filed Sept. 8, 2016, exhibit G.

Because the undersigned did not ask for additional reports from an expert, it was not reasonable to obtain more reports.  A paying client would be unlikely to pay for work that the presiding special master did not request.  Riggins v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *12 (Fed. Cl. Spec. Mstr. June 15, 2009) (setting forth the paying client test), mot. for rev. denied (Fed. Cl. Dec. 10, 2009), aff'd, 406 Fed. App'x 479 (Fed. Cir. 2011); see also Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 222 (2009) (ruling the special master was not arbitrary in awarding no compensation for unnecessary work).

On the other hand, the April 15, 2016 order did instruct the parties to file briefs.  If Mr. Baseluos had interpreted the term "briefs" to mean an argument summarizing existing evidence, then Mr. Baseluos would have spent time writing the briefs.  So, in a way, Dr. Lokshin performed work that Mr. Baseluos should have performed.  The work, therefore, is compensable.  See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (ruling that special master should have compensated an attorney, who performed paralegal work, at paralegal rates rather than not compensating the attorney at all).  Therefore, for the work after trial through August 26, 2016 (the date petitioners filed their reply brief), the petitioners are awarded $10,600.00  This represents 40 hours of Mr. Baseluos's time at his usual rate of $265.00 per hour.

Dr. Lokshin also incurred costs.  Most are reasonable.  However, he has charged $900.92 for a first-class airline ticket.  Pet'rs' Fee Mot., exhibit E at 3. There is no persuasive evidence that a hypothetical paying client would agree to incur the expense of a first-class airline ticket.  Therefore, the undersigned reduces this charge by $450.  All other expenses incurred are reasonable, adequately documented, and paid in full.

## C.  Summary of Attorneys' Fees and Costs

The petitioners have established the reasonableness of the following items:

| | |
|---|---|
| Attorneys' Fees | $73,000.00 |
| Attorneys' Costs exclusive of Dr. Lokshin | $4,240.62 |
| Costs of Petitioners, personally | $2,150.00 |
| Dr. Lokshin's Fee | $57,167.50 |
| Dr. Lokshin's Costs | $1,428.69 |
| Work on Post-Hearing Submissions | $10,600.00 |
| TOTAL | $148,586.81 |

## Conclusion

**Petitioners are entitled to an award of interim attorneys' fees and costs totaling $148,586.81.**

The award shall be paid as follows:

**a.** A lump sum of $146,436.81 in the form of a check made payable to petitioners, and petitioners' counsel, Michael Baseluos, of Baseluos Law Firm, for interim attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).

**b.** A lump sum of $2,150.00, payable to petitioners, Bo and Natalie DePena, for costs they incurred in pursuit of their petition.

There is no just reason to delay the entry of judgment on interim attorneys' fees and costs.  The Clerk shall enter judgment accordingly.[8]

**IT IS SO ORDERED**.

S/Christian J. Moran
Christian J. Moran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.